UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN CARROW,

                        Plaintiff,                       No. 06 Civ. 1436 (LTS)(JCF)

        -v-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, GIANPAOL DILISIO,
WILFRED CAMACHO, EDWARD MARTINEZ
and POLICE OFFICERS "JOHN DOE" 1-3,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

        Plaintiff Jonathan Carrow ("Plaintiff") brings this action against the City of New York, the New York City Police Department, New York City Police Department Detective Wifredo Camacho ("Detective Camacho"), and New York City Police Department Officers Gianpaol Dilisio ("Officer Dilisio"), Edward Martinez ("Officer Martinez"), and John Andryuk ("Officer Andryuk"), asserting claims pursuant to 42 U.S.C. § 1983 for use of excessive force, false arrest, false imprisonment, unreasonable stop and frisk, malicious prosecution, verbal abuse and harassment, and suggestive identification. Plaintiff also asserts claims against the City of New York for its allegedly negligent training of its police officers and for allegedly encouraging the use of unreasonable and excessive force applied through race-based arrest quotas. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

        Plaintiff also asserts the following claims under New York state law: false arrest; unlawful stop, search, and seizure; unlawful imprisonment; malicious prosecution; assault and battery; negligence; intentional infliction of emotional distress; and negligent infliction of

emotional distress.  The Court has supplemental jurisdiction of Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367.

Defendants City of New York, Detective Camacho, Officer Dilisio, Officer

Martinez, and Officer Andryuk (collectively, "Defendants") have moved for summary judgment

pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of all the claims asserted

against them.  The Court has reviewed thoroughly and considered carefully all of the parties'

submissions.  For the following reasons, Defendants' motion is granted in its entirety.

Plaintiff has neither identified nor served with process the three "John Doe"

defendants.  Accordingly, Plaintiff's claims against the "John Doe" defendants are dismissed

without prejudice pursuant to Rule 4 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P.

4(m).  Plaintiff's claims against the New York City Police Department are also dismissed,

without prejudice to the claims asserted against the City of New York in this action, because the

New York City Police Department, as a New York City agency, cannot be sued independently.

See New York City Charter, Chapter 17 § 396 (2008) (providing that "[a]ll actions and

proceedings for the recovery of penalties for the violation of any law shall be brought in the name

of the city of New York and not in that of any agency, except where otherwise provided by law");

McAllister v. New York City Police Dep't, No. 97 Civ. 7420, 1998 U.S. Dist. LEXIS 8847, at *1

(S.D.N.Y. June 12, 1998).

BACKGROUND

The following facts are undisputed unless otherwise noted.[1]  On December 14,

---

[1]          Citations to the parties' respective S.D.N.Y. Local Civil Rule 56.1
statements ("__ 56.1 Stmt.") incorporate by reference citations to the
underlying evidentiary submissions.

2004, at approximately 9:40 p.m., two armed African-American males entered a bodega located at 750 Lydig Avenue, Bronx County, New York, and robbed it at gunpoint.  (Ziauddin Dep. 52.) The store's clerk, Mohammed Ziauddin, was working alone at the time.  (Id.)  Upon entering the store, the taller of the two men jumped over the counter and assaulted Ziauddin, hitting him in the face multiple times.  (Id. at 55–57.)  The taller man then emptied the register and a nearby box of large bills.  In all, the robbers stole approximately $2,000 in cash.  (Id. at 56.)  Ziauddin was injured but did not seek medical treatment.  Ziauddin reported the robbery to the police and helped the responding officer search the surrounding area for possible suspects, but no arrests were made.  (Id. at 55–57.)

         The bodega was robbed a second time on January 18, 2005.  Ziauddin and a co-worker were working when, at approximately 8:30 or 8:45 p.m., two men entered the store. (Pl.'s 56.1 Stmt. ¶ 2).  Ziauddin identified the men as the same two who had robbed the store the month before.  (Ziauddin Dep. 54–55.)  Both men were African-American and were wearing ski masks that left visible the eyes, nose, chin, jaws and forehead.  (Id. at 21–22; Pl.'s Ex.10 ("Police Radio Report").)  Ziauddin did not resist the second robbery and was not injured.  (See generally, Ziauddin Dep.)  The robbers stole approximately $2,200 - $2,400 in cash, lottery tickets, and two cartons of cigarettes.  (Id. at 25–26.)  When the robbers left the store, Ziauddin pursued them at a safe distance down the street.  He witnessed the two men flee into a nearby courtyard, remove their ski masks, and enter an adjacent apartment building.  (Id. at 27–28.)  While Ziauddin was pursuing the robbers, his co-worker called the police, providing a description of the suspects that was broadcast over the police radio.  (Id. at 28–29.)  A number of police officers, including defendant Officers Dilisio, Martinez, and Andryuk, responded to the call and arrived at the store

within several minutes of the robbery.  (Def.'s 56.1 Stmt. ¶ 10.)

When Ziauddin returned to the store, he provided the police with additional information about the robbery and the perpetrators.  (Id. at ¶ 13; Pl.'s 56.1 Stmt. ¶ 14.)  Ziauddin reported that the two robbers were quite different in appearance from each other: the first was "very big and fat" and was shorter than five and a half feet tall; the second was in his twenties and about six feet tall, and was wearing a black hooded North Face brand jacket and "blue colored or something" jeans.  The shorter, heavier man held two pistols while the taller man again jumped over the counter and emptied the registers and the box of larger bills.  (Ziauddin Dep. 24.)  Between the radio broadcast and Ziauddin's additional description, the officers possessed information indicating that one of the robbers was an armed, "tall," Black male in his twenties, with a narrow nose, dressed in a hooded black North Face brand jacket, "blue jeans," and a ski mask.  Ziauddin also identified for the officers the building into which he had seen the suspects flee just minutes earlier.  (Police Radio Dispatch; Ziauddin Dep. 30–31.)  Based on this information, the police canvassed the nearby area, encountering Plaintiff at approximately 9:25 p.m.  (Pl.'s 56.1 Stmt. ¶ 31.)  Plaintiff was standing in the courtyard outside of the apartment building identified by Ziauddin.  (Id. at ¶ 31; Pl.'s Dep. 149–50.)  Plaintiff, a 6'1" African-American male, was wearing black jeans and a black North Face brand jacket.  (Pl.'s 56.1 Stmt. ¶¶ 24, 40.)

Suspecting that Plaintiff was the perpetrator, the officers approached him with their guns drawn.  (Def.'s 56.1 Stmt. ¶ 25; Pl.'s Dep. 108, 135.)  The officers stopped Plaintiff and frisked him, finding a black ski mask.  (Def.'s 56.1 Stmt. ¶¶ 26, 29.)  The officers brought Ziauddin to the courtyard in a police vehicle so that he could identify the suspect.  (Pl.'s 56.1

Stmt. ¶ 53.)  Ziauddin visually identified Plaintiff as the perpetrator from the police vehicle,[2] and

Plaintiff was placed under arrest and transported to the 49th Precinct Police Station.  (Id. at ¶¶ 61,

63; Def.'s 56.1 Stmt. ¶ 41.)  Ziauddin also identified Plaintiff as one of the perpetrators of the

first robbery.  (Pl.'s Exh. 8 ("Complaint Follow Up").)  The bodega had a security camera on the

premises, but it was not working on the night of the second robbery.  (Ziauddin Dep. 43–44.)

        Plaintiff was charged with two counts of robbery in the first degree,  two counts of

robbery in the second degree, two counts of robbery in the third degree,  two counts of grand

larceny in the fourth degree, two counts of menacing in the second degree, and two counts of

criminal possession of stolen property in the fourth degree, pursuant to New York Penal Law  §§

160.15, 160.10, 160.05, 155.30, 120.14, and 165.45, respectively.  (See Pl.'s Exh. 11

("Indictment Sheet").)  Plaintiff was represented by appointed counsel at his arraignment and was

unable to post bail.  (Pl.'s Dep. 184.)  Plaintiff was held at Riker's Island for approximately four

weeks.  (Id. at 186–91.)  The grand jury dismissed the indictment on February 7, 2005, on all

charges due to a lack of sufficient evidence.  (Indictment Sheet.)   Plaintiff denies any

involvement in the robberies at issue.  (Pl.'s 56.1 Stmt. ¶¶ 68, 71.)  Plaintiff commenced this

action on February 22, 2006.  (Docket entry no. 1.)

<u>DISCUSSION</u>

        Summary judgment in favor of a moving party is appropriate where the

---

[2]    The parties dispute the distance from which Plaintiff was identified.  The proffered estimates range from approximately five to twenty feet.  <u>Compare</u> Pl.'s Dep. 153 ("More than twenty feet though.  I don't know approximate distance.") <u>with</u> Ziauddin Dep. 38 ("It's like between five to ten feet.").  The parties also dispute whether Plaintiff's hat was pulled down to his eyebrows at the time of the identification.  <u>Compare</u> Pl's Dep. 156 <u>with</u> Ziauddin Dep. 41; Dilisio Dep. 255.

"pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of establishing an absence of any genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Summary judgment is not appropriate if there are disputes about material facts "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).  However, the non-moving party cannot avoid summary judgment through vague assertions regarding the existence of disputed material facts or "defeat the motion through mere speculation or conjecture."  W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (alteration in original)).  The evidence is viewed in the light most favorable to the nonmoving party and all reasonable inferences are drawn in its favor.  Rubens v. Mason, 527 F.3d 252 (2d Cir. 2008).

####        The Initial Stop

Plaintiff alleges that the officers' decision to stop and search him was unreasonable, constituting a violation of his Fourth Amendment rights.  Plaintiff also alleges that it was unreasonable for the officers to have drawn their firearms in effectuating the stop.

In Terry v. Ohio, the Supreme Court held that police officers may detain an individual briefly for questioning if they reasonably suspect that criminal activity is afoot and the police may frisk the suspect if they reasonably believe he is armed and dangerous.  Terry v. Ohio,

392 U.S. 1, 30-31 (1968); see also United States v. Padilla, 548 F.3d 179, 186 (2d Cir. 2008)

(holding that a police officer may briefly stop and detain an individual for questioning "if the

officer has a reasonable suspicion the individual is, has been, or is about to be engaged in

criminal activity" (internal quotation marks and citation omitted)).   "A valid Terry stop must be

justified at its inception, and there must be a particularized and objective basis for suspicion of

legal wrongdoing under the totality of the circumstances."   United States v. Lopez, 321 Fed.

App'x 65, 67 (2d Cir. 2009) (internal quotation marks and citation omitted).   "[A]n investigative

stop does not comport with the requirements of the Fourth Amendment unless 'specific

articulable facts, together with rational inferences from those facts, [] reasonably warrant

suspicion' that the individual stopped was engaged in criminal activity."   United States v.

Alexander, 907 F.2d 269, 272 (2d Cir. 1990) (quoting United States v. Brignoni-Ponce, 422 U.S.

873 (1975)); United States v. Colon, 250 F.3d 130, 134 (2d Cir. 2001).   The amount of

"suspicion needed to justify an encounter is less than a 'fair probability' of wrongdoing, and

'considerably less than proof of wrongdoing by a preponderance of the evidence.'"   Padilla, 548

F.3d at 186–87 (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

      "In connection with such a stop, the officer may 'tak[e] steps to assure himself

that the person with whom he is dealing is not armed with a weapon that could unexpectedly and

fatally be used against him.'"   United States v. Jaramillo, 25 F.3d 1146, 1150–51 (2d Cir. 1994)

(quoting Terry, 392 U.S. at 23); see also Colon, 250 F.3d at 134 ("The investigating officer may

also frisk an individual for weapons if the officer reasonably believes that person to be armed and

dangerous."); Alexander, 907 F.2d at 273 (in a traffic stop of suspected narcotics traffickers,

officers acted reasonably in deciding to unholster their guns and frisk the occupants of the car).

Plaintiff asserts that the stop and frisk was unconstitutional because the officers lacked sufficient information to render the stop reasonable under the circumstances.  Plaintiff argues that the description broadcast over the police radio failed to provide sufficient information upon which to base a reasonable <u>Terry</u> stop.  However, it is undisputed that a victim, Ziauddin, provided additional information to the police in person before the officers encountered Plaintiff. (Ziauddin Dep. 30–31; Pl.'s 56.1 Stmt. ¶¶ 13, 14.)  Therefore, when considering the reasonableness of the officers' conduct during the <u>Terry</u> stop, both the information broadcast over the police radio and the information provided by the victim at the bodega must be considered.

Plaintiff also argues that the description was too general to justify stopping Plaintiff and that many of the physical characteristics in the description do not match his own. However, when the physical description provided is considered in the context of the totality of the circumstances, it is apparent that the description was sufficiently specific to create a reasonable suspicion justifying a <u>Terry</u> stop.  Between the radio dispatch and the in-person discussion with Ziauddin, the officers had been provided information indicating that the robber was an armed, tall, Black male in his twenties, with a narrow nose, wearing a black North Face brand jacket, blue colored jeans, and a ski mask.  The officers also knew which building the suspects had fled into just minutes earlier.  (<u>Id.</u>; Police Radio Dispatch.)[3]  The officers

---

[3]    The police radio dispatch is not excludable hearsay in this context and may be considered on the motion for summary judgment.  The information is not proffered "to prove the truth of the matter asserted."  <u>See</u> Fed. R. Evid. 801(a). Rather, it is proffered to prove the information that had been provided to the police officers at the time they stopped and arrested Plaintiff.  <u>See, e.g.</u>, <u>United States v. Price</u>, 458 F.3d 202, 208 (3d Cir. 2006) ("The non-hearsay evidentiary function of testimony about a police radio call is to provide a 'background'

encountered Plaintiff in the courtyard outside that building; Plaintiff's physical appearance was consistent with the detailed information that Ziauddin had provided.  Based on this undisputed evidence, no rational fact finder could conclude that the officers' Terry stop was unreasonable. See Padilla, 548 F.3d at 186–88.

The undisputed facts also establish that the officers were similarly justified in approaching Plaintiff with their firearms drawn.  The methods used during an investigative detention should be the "'least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'"  Gilles v. Repicky, 511 F.3d 239, 245 (2d Cir. 2007) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion)).  "This doctrine has supported a range of restraints incident to a stop, from the pat-down at issue in Terry to the drawing of firearms," United States v. Newton, 369 F.3d 659, 674 (2d Cir. 2004) (internal citations omitted), and "[w]hat might be unreasonable when an officer merely suspects that a minor offense has been committed is not unreasonable when . . . officers have reason to fear that a suspect criminal is armed."  United States v. Harley, 682 F.2d 398, 402 (2d Cir. 1982).

Although "there is no hard and fast rule concerning the display of weapons in investigative stops," United States v. Nargi, 732 F.2d 1102, 1106 (2d Cir. 1984), "[w]e would be heartless if we did not share the officers' concern for their own safety . . . [and] we cannot impose on law enforcement personnel the Hobson's choice of keeping their guns holstered when to do so 'increases the risk that they will be shot.'"  Harley, 682 F.2d at 402 (citing United States v. Jackson, 652 F.2d 244, 249 (2d Cir. 1981)).  "A law enforcement agent, faced with the

_____

explanation for the testifying officer's actions – that is, to explain what the officer was doing at the scene.").

possibility of danger, has a right to take reasonable steps to protect himself . . .  regardless of

whether probable cause to arrest exists." <u>Alexander</u>, 907 F.2d at 272 (holding that it was

reasonable for officers to unholster their weapons and frisk the defendant when the officers

strongly suspected that the defendant had previously engaged in an illegal drug sale).  "The

officer need not be absolutely certain that the individual is armed; the issue is whether a

reasonably prudent man in the circumstances would be warranted in the belief that his safety . . .

was in danger." <u>Id.</u> (quoting <u>Terry</u>, 392 U.S. at 27).  Here, the officers drew their firearms when

they were responding to a report of an armed threat and had grounds for reasonable suspicion that

Plaintiff was an armed perpetrator of the robbery.  Accordingly, no rational fact finder could

conclude that it was unreasonable under the circumstances for the officers to effectuate the <u>Terry</u>

stop with their weapons drawn as a safety precaution.

       Nor could a rational fact finder conclude that it was unreasonable for the officers

to protect themselves by frisking Plaintiff when they stopped him.  "[W]here an officer has a

reasonable basis to think that the person stopped poses a present physical threat to the officer or

others, the Fourth Amendment permits the officer to take 'necessary measures . . . to neutralize

the threat' without converting a reasonable stop into a de facto arrest." <u>Newton</u>, 369 F.3d at 674

(quoting <u>Terry</u>, 392 U.S. at 24).  Where police officers reasonably believe that a suspect may be

armed and dangerous they may frisk the suspect to search for weapons. <u>See Colon</u>, 250 F.3d at

134; <u>Jaramillo</u>, 25 F.3d at 1150–51; <u>United States v. Muhammad</u>, 463 F.3d 115, 124 (2d Cir.

2006).  Plaintiff fails to frame an issue of material fact on this point because of the undisputed

evidence that the officers had been told that the robbers were armed and the officers had grounds

for reasonable suspicion that Plaintiff was one of the robbers.

In sum, Plaintiff has not proffered any evidence that would enable a rational fact finder to conclude that the officers' conduct in initiating the Terry stop, frisking the Plaintiff for weapons, or drawing their own firearms when approaching the suspect was unreasonable. Therefore, Defendants' motion for summary judgment on Plaintiff's claims arising from the initial stop and frisk is granted.

Identification at Scene

Plaintiff also argues that the officers' use of a "showup identification" violated his due process rights under the Fifth Amendment.  The Due Process Clause protects individuals from the use of evidence that has been acquired through impermissibly suggestive procedures. See Manson v. Brathwaite, 432 U.S. 98 (1977).  Suggestive methods of identification are disfavored yet are not, in isolation, a violation of a defendant's due process rights.  Rather, "such procedures are disapproved 'because they increase the likelihood of misidentification,' and it is the admission of testimony carrying such a 'likelihood of misidentification which violates a defendant's right to due process.'"  Dunnigan, 137 F.3d 117, 128 (2d Cir. 1998) (quoting  Neil v. Biggers, 409 U.S. 188, 198 (1972)). Here, the only evidentiary proceeding occurred before the grand jury.  Even assuming that evidence of the showup identification was presented to the grand jury, Plaintiff fails to make a prima facie case that he was deprived of any protected interest without due process by virtue of such presentation, since the grand jury declined to indict him. Defendants' motion for summary judgment is therefore granted as to this claim.[4]

---

[4]     Plaintiff's argument regarding his identification by Ziauddin can also be construed as a claim that Plaintiff's arrest was unlawful because the officers' did not possess the requisite probable cause to arrest him but, rather, arrested Plaintiff on the basis of an unlawful identification procedure.  That claim is addressed infra.

False Arrest and False Imprisonment Claims

Plaintiff alleges that the defendant Officers violated his constitutional rights by arresting him without probable cause in violation of the Fourth Amendment.  The elements of a false arrest claim under 42 U.S.C. § 1983 are substantially the same as the elements of a false arrest claim under New York law.  See Rutigliano v. City of New York, 326 Fed. App'x 5, 7 (2d Cir. 2009); see also Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir. 2007) ("As in the case of false arrest, we look to . . . state law principles to determine the validity of a plaintiff's federal civil rights claim based on false imprisonment") (internal citation omitted).  For both claims, a plaintiff must prove that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).  "In New York, the tort of false arrest is synonymous with that of false imprisonment."  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473 (N.Y. 1972)).  Accordingly, this analysis applies to both claims.

A defendant's showing of probable cause will defeat Section 1983 and state tort law claims for false arrest and false imprisonment.  See, e.g., Zanghi v. Incorporated Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985).  "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'"  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)).  "Probable cause is to be determined from the 'totality-of-the-circumstances.'"  U.S. v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987) (quoting Illinois v. Gates, 426

U.S. 213, 230 (1983)).  An officer must have "'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  Rutigliano, 326 Fed. App'x at 7–8 (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  "'The evidence . . . must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'"  Ceballos, 812 F.2d at 50 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).

It is undisputed that the arresting officers possessed the following information: Plaintiff was standing in a courtyard into which Ziauddin had reported that the perpetrators of an armed robbery had fled approximately half an hour earlier; Plaintiff's clothing and general physical description matched the description provided of one of the robbers; and Ziauddin, a victim of the robbery, positively identified Plaintiff in a "showup" identification as one of the robbers within an hour of the crime.  "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubts as to the person's veracity."  Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).  Plaintiff has not proffered any evidence that would enable a rational fact finder to conclude that the officers had any reason to doubt the veracity of Ziauddin.  Rather, Plaintiff argues that Ziauddin's identification of him was the product of an unreliable identification procedure that heightened the risk of misidentification and was therefore inadequate to support probable cause to arrest. However, the undisputed evidence demonstrates that the officers reasonably relied upon Ziauddin's identification in arresting Plaintiff.

Plaintiff does not contest that "evidence from showups held in close temporal and

geographic proximity to the crime scene," Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009) (internal citation omitted), may be used to substantiate a finding of probable cause to arrest. Plaintiff argues, however, that Ziauddin's identification of Plaintiff was unreliable because of the distance between Ziauddin and Plaintiff, the lighting conditions that obtained at the time, and the fact that Plaintiff was wearing a hat that obscured Ziauddin's view of his face.  Viewing the facts in the light most favorable to Plaintiff, the undisputed evidence demonstrates that Ziauddin was able to identify Plaintiff based upon his build, the clothing he was wearing, and facial features such as his nose and jaw that could not have been obscured by a hat.  The Court need not conclude whether this identification, on its own, would have been sufficient to justify Plaintiff's arrest.  In light of the witness identification, the corroborating description of the perpetrator, and the proximity in both time and place between the encounter with Plaintiff and the commission of the crime, no rational fact finder could conclude that, under the totality of the circumstances, the officers lacked probable cause to arrest Plaintiff.  See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) ("[a] finding of probable cause can be made based on the "totality of the circumstances"); Caldarola, 298 F.3d at 163 ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth") (internal citation omitted).  As Plaintiff has failed to proffer evidence sufficient to frame a genuine issue of material fact as to whether the arrest was privileged by virtue of the existence of probable cause, Defendants' motion for summary judgment as a matter of law on these claims is granted.

———

Verbal Abuse and Harassment Claim

Plaintiff's Section 1983 claim fails as a matter of law to the extent it is premised on the officers' alleged use of verbal abuse and harassment.  It is well established that verbal abuse and profanity is not actionable conduct under 42 U.S.C. §1983, as it does not violate any protected federal right.  See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); Crown v. Croce, 967 F. Supp. 101, 104 (S.D.N.Y. 1997); Beal v. City of New York, No. 92 Civ. 0718, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994) ("mere verbal abuse, and even vile language, does not give rise to a cognizable claim under Section 1983"), aff'd, 89 F.3d 826 (2d Cir. 1995).

Malicious Prosecution Claim

Plaintiff asserts a claim for violation of his Fourth Amendments rights due to malicious prosecution.  A claim for malicious prosecution pursuant to 42 U.S.C. § 1983 is governed by state law.  "Under New York law, a plaintiff suing for malicious prosecution must establish: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."  See Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995).  To sustain a claim, the "plaintiff must demonstrate conduct by the defendant that is tortious under state law and results in a constitutionally cognizable deprivation of liberty."  Williams v. City of New York, No. 02 Civ. 3693, 2003 U.S. Dist. LEXIS 19078, at *15 (S.D.N.Y. October 23, 2003) aff'd, Williams v. City of New York, 120 Fed. App'x 388 (2d Cir. 2005).  The second element of the claim is not at issue, as the grand jury found there was insufficient evidence to support an indictment, nor is there any dispute that Plaintiff, who was

detained for some four weeks, suffered a cognizable deprivation of liberty.

Plaintiff's claim fails because Plaintiff has not proffered any evidence to support a finding that the prosecution lacked probable cause to commence the proceedings.  The existence of probable cause to prosecute requires a distinct inquiry from an inquiry into the existence of probable cause to arrest.  See Posr v. Court Officer Shield 207, 180 F.3d 409, 417 (2d Cir. 1997).  However, in order for the probable cause that existed at the time of arrest to "dissipate prior to commencement of prosecution, the 'groundless nature of the charge must be made apparent to the defendants by the discovery of some intervening fact.'"  See Golub v. City of New York, 334 F. Supp. 2d 399, 406 (S.D.N.Y. 2004) (citing Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003)).

As previously discussed, the officers had probable cause to believe Plaintiff had committed a crime when they arrested him.  No rational fact finder could conclude that, under the totality of the circumstances, the officers lacked probable cause to arrest Plaintiff, in light of the witness identification, the corroborating description of the perpetrator, and the proximity in both time and place between the encounter with Plaintiff and the commission of the crime.  Plaintiff has not proffered any evidence to support a finding that probable cause dissipated after Plaintiff's arrest but before he was arraigned.  Plaintiff's sole allegation in this regard is that the officers suppressed a security camera videotape that would have exculpated him.  However, the undisputed evidence indicates no such videotape existed because the surveillance camera at the bodega was not working at the time of the robbery.  Accordingly, Plaintiff has failed to frame any genuine issue of material fact as to whether probable cause for prosecution was vitiated by police misconduct.  Nor has Plaintiff proffered evidence sufficient to frame a genuine issue of material

fact as to whether Defendants acted with actual malice.  These shortcomings are fatal to Plaintiff's

claim and obviate the need for further inquiry into the other elements of the malicious prosecution

claim.   See Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002)

(granting defendants' motion for summary judgment on plaintiff's malicious prosecution claim

because "there must be a showing of some deliberate act punctuated with awareness of conscious

falsity to establish malice [and] [t]here is nothing in this record evincing even an inference of a

motivation on the part of defendants to pursue [plaintiff] for any purpose other than to see the ends

of justice served").  Accordingly, Defendants' motion for summary judgment is granted on this

claim.

            Plaintiff's Monell Claim Against the City of New York

                Plaintiff also asserts his Section 1983 claims against the City of New York.  See

Monell v. Dep't of Social Services, 436 U.S. 658 (1978).  Under Monell and its progeny, to

establish municipal liability a plaintiff must demonstrate that he was deprived, through a

municipal custom or policy, of a right, privilege or immunity guaranteed by the Constitution or

the laws of the United States.  See Amnesty America v. Town of West Hartford, 361 F.3d 113,

124-25 (2d Cir. 2004) ("Demonstrating that the municipality itself caused or is implicated in the

constitutional violation is the touchstone of establishing that a municipality can be held liable for

unconstitutional actions taken by municipal employees.").  "Monell does not provide a separate

cause of action for the failure by the government to train its employees; it extends liability to a

municipal organization where that organization's failure to train, or the policies or customs that it

has sanctioned, led to an independent constitutional violation."  Okin v. Vill. of

Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009).  Plaintiff's various claims

against the City of New York all fail under <u>Monell</u> because, as explained above, Plaintiff has not established in the first instance that he was deprived of a constitutionally protected right.

Plaintiff has not proffered evidence sufficient to frame a genuine issue of material fact as to any of the underlying alleged constitutional violations.  Irrespective of whether the New York City Police Department had adequate training programs or policies in place, Plaintiff has not proffered evidence that would enable a reasonable fact finder to conclude that any such policy or deficiency caused him a constitutional injury.  Therefore, summary judgment must be granted on Plaintiff's Section 1983 claims against the City of New York.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("neither <u>Monell v. Dep't of Social Services</u>, nor any of our other cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm").

<u>        State Law Claims</u>

Plaintiff also asserts state law claims of false arrest; unlawful stop, search and seizure; unlawful imprisonment; malicious prosecution; assault and battery; negligence; intentional infliction of emotional distress; and negligent infliction of emotional distress.  The

elements of Plaintiff's false arrest,[5] false imprisonment,[6] and malicious prosecution[7] claims are congruent with Plaintiff's claims arising under federal law.  Accordingly, these claims fail for the same reasons that their federal counterparts fail and Defendants are entitled to summary judgment on these claims.  Plaintiff's remaining state law claims – unlawful stop, search and seizure; assault and battery; negligence; intentional infliction of emotional distress; and negligent infliction of emotional distress – are dismissed without prejudice, pursuant to the Court's discretionary authority to dismiss state claims without prejudice when all claims over which it had original jurisdiction are dismissed.  See 28 U.S.C. §1367(c)(3);  Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

CONCLUSION

Defendants' motion for summary judgment as a matter of law is granted in its

---

[5]     "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law . . . The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983."  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).

[6]      "In New York, the tort of false arrest is synonymous with that of false imprisonment."  Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) (citing Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 473 (N.Y. 1972)).  Accordingly, as the elements of the two claims are the same in the law enforcement context, both can be dismissed.

[7]     "The elements of the tort of malicious prosecution are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice."  See, e.g., Broughton v. State of New York, 37 N.Y.2d 451, 457 (N.Y. 1975).

entirety and Plaintiff's claims arising under federal law against the City of New York, Detective

Camacho, Officer Dilisio, Officer Martinez, Officer Andryuk are dismissed. Plaintiff's claims

against defendant "John Does" are dismissed without prejudice pursuant to Rule 4(m) of the

Federal Rules of Civil Procedure. Plaintiff's claims against the New York City Police

Department are dismissed as subsumed by those against the City of New York. Plaintiff's state

law claims against all Defendants asserting false arrest, false imprisonment, and malicious

prosecution are dismissed with prejudice. The Court declines to exercise jurisdiction of

Plaintiff's state law claims against all Defendants asserting unlawful stop, search and seizure;

assault and battery; negligence; intentional infliction of emotional distress; and negligent

infliction of emotional distress; those claims are therefore dismissed without prejudice. The

Clerk of Court is respectfully requested to enter judgment accordingly and close this case. This

Opinion and Order resolves docket entry no. 50.

SO ORDERED.

Dated: New York, New York
       March 17, 2010

LAURA TAYLOR SWAIN
United States District Judge